[No. 4622.]

The Burlington and Colorado Railroad Company v. The Colorado Eastern Railroad Company.

1.   Trust Deeds—Subsequent Grants—Foreclosure—Effect.

Where, after the recording of a trust deed, a subsequent grantor of the land granted a right of way for a ditch, after foreclosure of the trust deed, such easement was terminated and the lands passed to the purchaser free from any rights of the ditch owners.—P. 98.

2.   Deeds—Provisions—Reservations—Exceptions.

Where, at the time of the execution of a deed to a tract
of land, all rights of the owners of a ditch across the property
had been terminated by the previous foreclosure and sale of the
land under a trust deed, although they were still operating the
ditch, a provision in the deed reserving therefrom "any and all
rights which may have heretofore been conveyed to such ditch,"
is neither a reservation nor exception; and such deed conveyed
the fee to the entire land, subject only to the possible servitude
of the incorporeal ditch rights.—P. 99.

3.   Deeds—Rights of Way—Conditions Subsequent—Limitations.

A provision in a deed for the right of way for a ditch that
upon the happening of a certain contingency, to wit, the final
abandonment of the right of way for the purposes therein set
forth, then the rights granted should cease and revert to the
party of the first part, should be construed as a limitation and
not as a condition subsequent; and, therefore, upon the happening
of the event provided, the control and use of the land would
pass to the owner of the fee without entry or claim.—P. 100.

*Appeal to the District Court of Arapahoe County.*
*Hon. Samuel L. Carpenter, Judge.*

Action by The Colorado Eastern Railroad Com-
pany against The Burlington and Colorado Railroad
Company.  From a judgment for plaintiff, defend-
ant appeals.                  *Affirmed.*

Messrs. Wolcott, Vaile & Waterman and Mr.
T. J. Leftwich (Mr. Wm. W. Field, of counsel), for
appellant.

Messrs. Rogers, Cuthbert & Ellis, for appellee.

Mr. Justice Goddard delivered the opinion of
the court:

On June 27, 1900, the appellee, plaintiff below,
instituted this action against the appellant, defend-
ant below, to recover possession of a certain tract of
land.  The appellant disclaimed all title to any por-
tion of the premises except to a certain strip 40 feet
in width along the north end and 15 feet in width

along the east side of the tract described in the complaint. Both parties claim title through one Cyrus Strong, who was the owner of a tract of land which included the ground in controversy. On the 12th day of September, 1881, he executed a deed to the Union Pacific Railroad Company, wherein, after describing the whole tract by "metes and bounds," the following language is used: "Hereby reserving from this deed a right of way given to the city of Denver * * * also reserving any and all rights which may have heretofore been conveyed to the Sigler's Ditch lying on the north side of said tract."

The appellee is vested with the title so conveyed. The appellant claims title through a quit-claim deed executed by Strong April 7, 1893, to Mitchell Benedict, describing a tract of land containing 70 acres, which included within its exterior boundaries the land in controversy. The title of the respective parties depends upon the construction of the language used in Strong's deed to the Union Pacific Railroad Company with reference to the rights which may have been conveyed to the Sigler's Ditch.

In order to understand what those rights were, it is necessary to examine certain conveyances made prior to the conveyance to Strong. These are as follows: In 1875, one Gerspach conveyed to Maxey a tract containing 110 acres, who conveyed the same to Elizabeth Gerspach. Before these conveyances were recorded, Gerspach executed a trust deed to one Witter for the use of Cathcart, covering 70 acres included within the 110 acres. After this trust deed was executed and recorded, Elizabeth Gerspach and others executed to George W. Sigler & Co. a deed which contained the following: "For and in consideration of the benefits from the construction and maintenance of a ditch * * * and in further consideration of one dollar," grant and give to George

W. Sigler & Co. the right of way over and through (certain described lots and parcels of land), "being 20 feet wide on each side of a line described as commencing and running as follows, to wit:" (Here follows the description of the center line of the ditch.)

"To have and to hold said right of way, with the privilege of entering in and upon the same for the purpose of constructing, repairing and maintaining a ditch or canal for conveying water for milling, manufacturing and irrigation purposes; and also for the erection of mills, manufactories, water wheels and machinery necessary and convenient for operating the same. * * *

"It is further agreed that, whenever said right of way shall be finally abandoned for the purposes hereinabove set forth, then the rights hereby granted shall cease and revert to the respective parties of the first part.

"It is further understood that the several parties of the first part shall have the right to use water from said ditch for irrigating purposes."

The trust deed to Witter was afterwards foreclosed, and through mesne conveyances from Cathcart, the purchaser at the foreclosure sale, the title to the 70-acre tract, except such portions as had been set apart by Cathcart as "The Garden Addition" and sold by him to one Vanderlip, passed to Strong.

It will be seen from the foregoing statement that the trust deed attached prior to the granting of the right of way to Sigler & Co., and through the subsequent foreclosure of the trust deed whatever rights that company had were terminated, and the title to the land passed to Strong, freed of any "rights which may have been conveyed to the Sigler ditch" by the deed of Mrs. Gerspach, which deed, at most, purported to convey the right to construct and maintain a ditch over and upon the tract of land de-

scribed, and did not attempt, or intend, to convey any title to the land itself. That such was the evident purpose of the deed is manifest from the language used. The thing granted was "the right of way," with the privilege of entering upon the land to construct and maintain a ditch, etc., with the provision that, whenever such right of way should be abandoned for the purposes specified, then the rights granted should cease and revert to the grantor.

When read in the light of these circumstances, we think the court below was correct in saying that the following clause in the Strong deed, "reserving any and all rights which may have heretofore been conveyed to Sigler's ditch," "is neither a reservation nor exception. It is not a reservation, because no new estate is created in the grantor. It is not an exception, because the thing described was not *in esse* at that time. That it should be read 'subject to,' the language itself clearly indicates."

Notwithstanding the records disclose that the rights of Sigler &. Co. terminated August 23, 1875, when Witter executed his trustee's deed to Cathcart, the evidence shows that the ditch was being operated at the time Strong executed the deed under consideration. It is evident, therefore, that Strong, while not conceding that there were any rights in the Sigler ditch outstanding, in order to protect himself against any possible liability on his covenant against incumbrances in the event such rights should, for any reason, be held to still exist, used the language mentioned. We think, therefore, that his deed conveyed to the Union Pacific Railroad Company all his right, title and interest in and to the entire tract described therein, subject to whatever rights the Sigler company or its assigns might have to maintain and operate the ditch upon and through the strip of ground in question. In other words, the fee of the

entire land was conveyed to the Union Pacific Railroad Company, subject only to such easement as Sigler or his assigns might then have, and the company took the fee to the entire tract, subject only to the possible servitude of these incorporeal ditch rights.—*Owen v. Field,* 102 Mass. 90-106.

As will be observed, it was expressly provided in the Gerspach deed to Sigler & Co. that, upon the happening of a certain contingency, to wit, the final abandonment of the right of way for the purposes therein set forth, then the rights granted should cease and revert to the respective parties of the first part. This clause in the deed should be construed as a limitation, and not as a condition subsequent; and, therefore, upon the happening of the event provided, the control and use of the land would pass to the owner of the fee without entry or claim.—*Owen v. Field, supra; Mitchell v. Bourbon County,* 76 S. W. 16.

It appears from the evidence that, before the ouster complained of, the ditch had been entirely abandoned. It follows that the title to the strip of land then held by the appellee was, at that time, freed and cleared of any and all rights theretofore granted to the Sigler company.

It is impossible to notice in detail the numerous errors assigned upon the admission of the testimony in behalf of the appellee, and no good purpose would be served thereby. It is sufficient to say that the trial court carefully considered these objections, and we think correctly disposed of them; that, in the view we take of this case, the judgment of the court below is manifestly correct and should be affirmed, and it is so ordered.                    *Affirmed.*

CHIEF JUSTICE GABBERT and Mr. JUSTICE BAILEY concur.